# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Julie Delgado-O'Neil,                    Civ. No. 08-4924 (MJD/JJK)

        Plaintiff,

v.

                                  **REPORT AND**
City of Minneapolis, Minnesota; and      **RECOMMENDATION**
Susan Segal, in her individual capacity;

        Defendants.

Jill Clark, Esq., Jill Clark PA, counsel for Plaintiff.

David D. Leishman, Esq., and Susan E. Ellingstad, Esq., Lockridge Grindal Nauen PLLP, counsel for Defendants.

JEFFREY J. KEYES, United States Magistrate Judge

      This matter is before the Court on Defendants' Motion for Dismissal of Section 1983 Claims (Doc. No. 15).   The case has been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1.  For the reasons stated below, this Court recommends that Defendants' motion be granted and Plaintiff's claims under 42 U.S.C. § 1983 be dismissed with prejudice.

## BACKGROUND

### I.    Background of Plaintiff's Employment-Discrimination Claims

      In this action, Plaintiff Julie Delgado O'Neil brings claims against Defendants for retaliation and discrimination in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, a claim under 42 U.S.C. § 1981 for discrimination in contract, and a claim under 42 U.S.C. § 1983 for retaliation in violation of her First Amendment rights. Only the § 1983 claim, which is asserted against Defendant the City of Minneapolis and individual Defendant Susan Segal, would be dismissed if the motion to dismiss is granted. Although the Title VII employment-discrimination/retaliation claims and the section 1981 discrimination claims are not directly in issue in this motion to dismiss, these underlying claims form an important backdrop for the section 1983 claim.

Plaintiff has been employed by the City of Minneapolis Attorney's Office since January 29, 1997. (Doc. No. 8, First Am. Compl. ("FAC") ¶¶ 7-8, *Delgado-O'Neil v. City of Minneapolis, et al.*, Civ. No. 09-1598 (MJD/JJK).)[1] Plaintiff's

---

[1]  This matter consists of two consolidated cases under the master file number 08-cv-4924 (MJD/JJK). (Doc. No. 14.) The related case, *Delgado-O'Neil v. City of Minneapolis, et al.*, Civ. No. 09-1598 (MJD/JJK), has been ordered closed. (Doc. No. 14.) That closed file is cited where necessary to direct attention to specific filings not expressly reflected in the master file.

When Defendants filed their partial motion to dismiss the § 1983 claims against Susan Segal and the City of Minneapolis, Plaintiff then interposed the First Amended Complaint and argues that the dismissal motion has been rendered moot. Defendants have not objected to the filing of the First Amended Complaint. Indeed, because no "responsive pleading" had been filed as provided in Rule 15(a)(1)(A), Plaintiff was able to amend her Complaint as a matter of course. *See* 6 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1483 at p. 484-85 (2d Ed. 1990) ("[C]ertain motions may be made before interposing a responsive pleading. Indeed, a motion involving any of the Rule 12(b) defenses normally must be made before serving a responsive pleading [and, thus,] courts have held that the filing of a motion to dismiss will not prevent a party from subsequently amending without leave of court."). Nevertheless, Defendants argue that the filing of that amended pleading did not

(Footnote Continued on Following Page)

current position with the City Attorney's Office is Assistant City Attorney I.  (*Id.* ¶ 9.)  Approximately a year after starting work at the City Attorney's Office in 1997, Plaintiff started to raise issues with her employer's Human Resources department about racial discrimination.  (*Id.* ¶ 16.)  She applied for promotions to higher level "Attorney II" positions in 2001, 2003, 2005, and 2007, but she was not selected.  (*Id.* ¶ 36.)  In 2001, nineteen individuals applied for Attorney II promotions, five of whom were persons of color, and one male person of color and one white female were promoted.  (*Id.* ¶ 37.)  In 2003, Plaintiff withdrew her application after being "advised" that the "list" for individuals to be promoted had been created before the oral exam.  (*Id.* ¶ 36.)  In 2003, two white males were promoted out of fourteen applicants, five of whom were persons of color.  (FAC ¶ 38.)  In 2005, four candidates out of nineteen total applicants were persons of color, and two white females were initially selected (*Id.* ¶ 39), and another white female and four white males were selected after additional rounds of interviewing.  (*Id.* ¶¶ 39-41.)  In March 2006, Plaintiff filed two discrimination complaints against the City Attorney's Office and the Minneapolis Department of Human Resources.  (*Id.* ¶ 17.)

---

(Footnote Continued from Previous Page)
cure the deficiencies they allege existed in the initial Complaint.  Thus, in considering the current motion to dismiss, this Court will determine whether Plaintiff's First Amended Complaint should be dismissed for failure to state a claim.  *See id.* § 1476 at p. 558 ("[D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending.").

In August 2006, the City Attorney's Office, through City Attorney Jay Haffern and Plaintiff's supervisor, Dana Bawner, invited applications for a Community Attorney position that would soon be opening. (*Id.* ¶ 19.) Although Plaintiff expressed her interest in the position (*Id.* ¶ 20), both Haffern and Banwer were aware that Plaintiff had filed discrimination complaints against the City Attorney's Office and Human Resources, and the open position was given to a "white female." (*Id.* ¶¶ 21-22.) Plaintiff never interviewed for this position. (FAC ¶¶ 21-22.) Plaintiff alleges that the white female selected for the position was less senior and less qualified for the position, and that "[Plaintiff] was passed over for this assignment . . . in retaliation for filing charges with the [Minneapolis Department of Civil Rights]." (*Id.* ¶¶ 22, 24.)

Plaintiff alleges that when it came to promoting attorneys to the higher level Attorney II position, the City Attorney's Office preferred applicants who had served in the job of Community Attorney, and that the white female who was selected for the Community Attorney position that opened in late 2006 was eventually promoted to Attorney II. (*Id.* ¶¶ 22, 25.) Six other attorneys, including an African American male, three white females, and two white males, who were appointed to Community Attorney positions all received promotions to Attorney II positions. (*Id.* ¶ 26.) Plaintiff asserts that these promotions were based, in part, on a "subjective oral exam," manipulated by Haffern and Human Resources personnel, which resulted in a disparate impact on minorities; she also made this assertion in a charge filed with the Minneapolis Department of Civil Rights. (*Id.*

¶ 27.)  The City Attorney's Office used this subjective interview component despite "more valid" methods in Human Resource's rules designed to ensure greater diversity within the City Attorney's Office.  (*See id.* ¶¶ 28-31.)

Plaintiff alleges that the promotional process placed minority candidates at the bottom of the list of eligible candidates because of the subjective oral exam, that non-minorities were selected for assignments that helped in the promotional process and that she was denied these opportunities, that these opportunities are selected for "special" or "pet" employees, and that the City Attorney's Office has no policy to equally distribute such opportunities to those with Attorney I positions.  (FAC ¶ 43.)

When she began complaining about this alleged discrimination, Plaintiff says that she was retaliated against with excessive discipline, frequent investigations, and poor-performance evaluations.  (*Id.* ¶ 45.)  Plaintiff's direct supervisor Banwer, who was aware of Plaintiff's complaints, was responsible for these decisions.  Plaintiff claims that Banwer assisted the "City in defending against the complaint/charges[, that] Banwer was biased against Plaintff, and that bias was manifested in Banwer's decisions against Plaintiff."  (*Id.* ¶ 45.) Plaintiff also asserts that Haffern was aware of her complaints, that Haffern had been interviewed by the Minneapolis Department of Civil Rights, and that Haffern contributed to her poor-performance evaluations.  (*Id.* ¶ 46.)

In March 2007, she filed a retaliation complaint against the Minneapolis City Attorney's Office.  (*Id.* ¶ 18.)  In September 2007, the Minneapolis Civil

Rights Department issued a probable-cause determination on Plaintiff's disparate-impact charge (*Id.* ¶ 47), which was part of Plaintiff's March 2007 retaliation complaint. (FAC ¶ 18.) In June 2008, the Civil Rights Department issued a probable-cause determination on an aiding-and-abetting charge Plaintiff filed against Human Resources. (*Id.* ¶ 48.) Plaintiff filed the first of her two federal lawsuits in August 2008, and she claims that the discrimination and retaliatory conduct continued into 2009.

## II. Plaintiff's Section 1983 Allegations

Plaintiff alleges that Defendant Susan Segal ("Segal") replaced Haffern as the City Attorney for Minneapolis, that Segal was informed of Plaintiff's history of complaints, and that she is a client-contact for defense counsel regarding this lawsuit. (*Id.* ¶ 50.) After Plaintiff filed the first of these now consolidated actions in federal court in August 2008 (*Id.* ¶ 51), the Star Tribune, on November 25, 2008, published an article about the lawsuit and Plaintiff's previous allegations of racial discrimination. (*Id.* ¶ 53.) Plaintiff alleges that on the same day the story ran, Segal orally reprimanded Plaintiff in Plaintiff's office (hereinafter the "office incident"). (*Id.*)

Even though Plaintiff amended her original Complaint in response to Defendants' motion to dismiss, which is now before this Court, the allegations about what actually happened in this office incident remain vague. According to the Amended Complaint, Segal entered Plaintiff's office to discuss some unspecified email as a pretext for bringing up the lawsuit and the Star Tribune

6

article.  (FAC ¶ 53.)  While she was in Plaintiff's office discussing the email, Segal mentioned that she knew about Plaintiff's lawsuit and the Star Tribune article.  (*Id.*)  Specifically, Plaintiff alleges that Segal was "angry and venting in the same timeframe she was addressing Plaintiff about this lawsuit and newspaper article.  It was clear to Plaintiff at the time, that the email Ms. Segal claimed to be addressing was not only pretext for coming into [Plaintiff's] office, but [Segal] had seized on the email as an excuse to come vent her anger over the lawsuit/article."  (*Id.*)  Plaintiff alleges that Segal admonished her before investigating the facts and did so in a manner that made it difficult for Plaintiff to do her job, but Plaintiff does not specify what this admonishment was about.  (*See id.*)  Plaintiff also says that Segal's reprimands during the office incident made it difficult for her to focus during a court appearance that afternoon.  (*Id.*)

This office incident began with the door to Plaintiff's office closed, but Segal "purposely opened the door and continued to berate and orally reprimand Plaintiff, so that others in the Office could hear.  This was humiliating for Plaintiff and Plaintiff alleges that it was designed to humiliate her."  (*Id.* ¶ 54.)  Plaintiff complained internally about the office incident.  (FAC ¶ 55.)

Plaintiff asserts that following the November 25, 2008 office incident, Plaintiff's direct supervisor Banwer reprimanded Plaintiff in December 2008.  (*Id.* ¶ 56.)  This reprimand was issued for some unspecified event that Banwer had known about since October 7, 2008, long before the office incident and Plaintiff's internal complaints regarding the office incident.  (*Id.*)  According to Plaintiff,

Banwer also knew about the August 2008 lawsuit, and in September 2008, issued Plaintiff a written reprimand because that lawsuit had been filed.  (*Id.* ¶ 52.)

At some point during the winter of 2009, but prior to February 2009, the City Attorney's Office opened four new supervisory positions.  In February 2009, Plaintiff applied for one of these supervisory positions, but Plaintiff contends that the reprimand Segal allegedly gave her during the office incident, and the one she later received from Banwer, "harmed Plaintiff in her effort to be promoted." (*Id.* ¶¶ 56-57.)  Plaintiff alleges, "upon information and belief," that Banwer's written reprimand following the office incident with Segal was placed in her file, and that there is "information about Segal's reprimand/admonishment" in Plaintiff's file as well.  (*Id.* ¶ 58.)  Plaintiff asserts that this information has "caused her to lose promotion(s) or have or will adversely affected [sic] her employment evaluations."  (FAC ¶ 58.)  Plaintiff filed a retaliation charge with the Equal Employment Opportunity Commission ("EEOC"), in March 2009, concerning retaliatory conduct that occurred in early December 2008.  (*Id.* ¶ 60.) This "retaliatory conduct" presumably refers to Banwer's written reprimand and the alleged inclusion of information about the office incident with Segal in her employment file.  (*See id.* ¶¶ 56, 58.)

Plaintiff says that in April 2009, she was told that she interviewed very well for the supervisory positions she sought in February 2009.[2] (*Id.* ¶ 59.) However, in April 2009, Plaintiff learned that she was not being promoted. (*Id.* ¶ 61.) She contends that she was passed over for the promotion in April 2009 in retaliation for filing charges of discrimination, complaining internally about discrimination and retaliation, and filing a lawsuit alleging discrimination and retaliation. (*Id.*) Plaintiff alleges that "upon information and belief, Plaintiff's standing up against the retaliation by filing suit against Susan Segal was a factor in passing her over for promotion (or the pretextual reason for Segal's oral reprimand of Plaintiff was an improper factor)." (FAC ¶ 61.) Plaintiff says that the City Attorney's Office and Segal continue to retaliate against her because of her status as a Plaintiff in lawsuits against the City Attorney's Office and her involvement in "other protected conduct." (*Id.*)

On June 23, 2009, Plaintiff filed her original Complaint in the second of these now consolidated actions, including a claim for First Amendment retaliation under 42 U.S.C. § 1983 against Segal and the City of Minneapolis.[3] Plaintiff's § 1983 claims against Susan Segal and the City of Minneapolis, which are based on Plaintiff's exercise of her First Amendment rights and Defendants' alleged

---

[2] Plaintiff also alleges that the City Attorney's Office promoted only white employees to the four supervisory positions for which she had applied in February 2009. (*Id.* ¶ 59.)

[3] As noted above, Plaintiff has now amended her original Complaint in response to Defendants' motion to dismiss. *See supra* note 1.

retaliation in response, are that Plaintiff engaged in protected conduct, "including but not limited to filing a federal lawsuit, expressing herself on issues of public concern . . . to the Star Tribune, filing charges of discrimination with the Civil Rights Department and the Equal Employment Opportunity Commission." (*Id.* ¶ 70.) She further asserts that "she suffered adverse impact from the retaliatory conduct that would cause a person of ordinary firmness not to engage in the protected conduct/speech." (*Id.*) And she asserts that the adverse action was motivated, at least in part, by the protected conduct/speech." (*Id.*) She also claims that "[a]s a direct and proximate result of Defendants' conduct (some of which was perpetrated by Chief Policymakers), inaction, policy or customs . . . Plaintiff suffered the deprivation of [her] constitutional and/or federal statutory rights[.]" (*Id.*) She alleges that, at least in part, she was passed over for these promotions in retaliation for her filing of a lawsuit and for her exercise of her First Amendment rights. (FAC ¶ 59) She claims that this was "because of the 'file' that had been amassed against her, and which included information about the 2 reprimands from [Banwer and Segal]." (*Id.* ¶ 61.)

On August 17, 2009, Defendants filed a motion to dismiss the § 1983 claim against Segal and the City of Minneapolis. (Doc. No. 3, *Delgado-O'Neil v. City of Minneapolis, et al.*, Civ. No. 09-1598 (MJD/JJK).)[4] Defendants have not made any motion to dismiss Plaintiff's Title VII retaliation claim (FAC ¶¶ 62-65), or her

_____

[4]      After these cases were consolidated, Defendants re-filed their motion to dismiss in the master file. (Doc. No. 15.)

Title VII discrimination claim (*Id.* ¶¶ 73-79), which are both asserted against the City of Minneapolis in Plaintiff's Amended Complaint.[5]  This Court, therefore, only addresses whether Plaintiff has sufficiently pleaded facts to state a claim for First Amendment retaliation under 42 U.S.C. § 1983 against Segal and the City of Minneapolis.

## DISCUSSION

### I.    Standard of Review

Federal Rule of Civil Procedure 8 requires that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief."  A civil complaint will be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To state a cause of action that will survive a Rule 12(b)(6) motion, a complaint must allege a set of historical facts, which, if proven true, would entitle the plaintiff to some legal redress against the named defendant(s) under some established legal theory.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980) (noting that "the complaint must allege facts, which if true, state a claim as a matter of law").

In deciding a motion to dismiss, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light

---

[5]    Because this is only a partial motion to dismiss Plaintiff's § 1983 claims, if this Court's recommendation is ultimately upheld, and the Defendants' motion to dismiss is granted, Plaintiff's First Amended Complaint would go forward to the extent that Plaintiff claims in she was the victim of racial discrimination (FAC ¶¶ 73-79), and that she was the victim of unlawful retaliation under Title VII.  (*Id.* ¶¶ 62-65.)

most favorable to the complainant.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint states a plausible claim for relief if its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  *Id.* at 545.  A complaint cannot simply "le[ave] open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery."  *Id.* at 562 (discussing the "no set of facts" standard from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' . . .  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).  Ultimately, evaluation of a complaint upon a motion to dismiss

is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

## II.     Legal Analysis

### A.     Plaintiff's Claims against Defendant Segal

#### 1.     Failure to State a Claim

To successfully plead a § 1983 civil-rights cause of action, as Plaintiff is attempting to do here, a complainant must allege a set of historical facts, which, if proven true, would demonstrate that the named defendant, here Segal, violated the complainant's federal constitutional rights while acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights" protected by the Constitution. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *Speed v. Ramsey County*, 954 F. Supp. 1392, 1397 (D. Minn. 1997) (same). Plaintiff must plead facts showing Segal's personal involvement in alleged constitutional wrongdoing. *See Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999); *see also Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001) (upholding summary dismissal of civil-rights claims because plaintiff's complaint "failed to allege sufficient personal involvement by any of defendants to support such a claim"). In sum, when a plaintiff seeks relief under § 1983, her complaint must set forth specific factual allegations showing what each named defendant allegedly did, or failed to do, while acting under color of state law, which purportedly violated the her federal constitutional rights. *See, e.g., Iqbal*, 129 S.

Ct. at 1948 (explaining that a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").  In other words, Plaintiff must plead facts showing Segal's direct responsibility for the constitutional violation.

To state a retaliation claim that is plausible on its face against Segal based on Plaintiff's exercise of her First Amendment rights, Plaintiff's First Amended Complaint must plead enough facts to raise a reasonable expectation that discovery will reveal evidence that: (1) Plaintiff engaged in activity protected by the First Amendment; (2) Segal took an adverse employment action against her; and (3) Plaintiff's protected conduct was a substantial or motivating factor in Segal's decision to take the adverse action.  *See Shockency v. Ramsey County*, 493 F.3d 941, 948 (8th Cir. 2007) (listing elements of a First Amendment retaliation claim).  There is no dispute that Plaintiff's First Amended Complaint sets forth sufficient factual allegations regarding the first element, namely, that Plaintiff engaged in protected activity by filing lawsuits and speaking to the press regarding the allegations Plaintiff had made.  The issue here centers on the next two elements: whether Segal took an adverse employment action against Plaintiff and whether Plaintiff's protected conduct was a substantial or motivating factor in Segal's decision to do so.

In *Iqbal*, the Court explained that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  129 S. Ct. at 1950.  The

Court began its analysis in *Iqbal* by identifying those allegations that were not entitled to the assumption of truth. *Id.* at 1951. Thus, in evaluating whether Plaintiff's First Amended Complaint sufficiently alleges that Segal violated Plaintiff's constitutional rights, this Court first identifies the First Amended Complaint's allegations against Defendant Segal that need not be accepted as true because they are "legal conclusion[s] couched as . . . factual allegation[s]." *See Twombly*, 550 U.S. at 555. In applying this principle, for the purposes of evaluating the motion to dismiss, this Court does not accept as true Plaintiff's allegation that "[a]fter Plaintiff began complaining about [various] discriminatory actions and processes (which includes filing Charges with the MDCR), she was retaliated against by: a) excessive discipline; b) frequent 'investigations'; and c) poor performance evaluations." (FAC ¶ 45.) Nor does this Court accept as true Plaintiff's allegation that she "was passed over [for a promotion to Attorney II] in retaliation for [her] protected conduct which includes but is not limited to: a) filing charges of discrimination; b) complaining internally about discrimination and/or retaliation; [and] c) filing a lawsuit alleging discrimination and/or retaliation." (*Id.* ¶ 61.) Similarly, Plaintiff's allegation that "standing up against retaliation by filing a suit against Susan Segal was a factor in passing her over for promotion" (*Id.*), is not entitled to the assumption of truth. These allegations are akin to the assertion plead by the plaintiffs in *Twombly* that several defendants "'ha[d] entered into a contract, combination or conspiracy to prevent competitive entry . . . and ha[d] agreed not to compete with one another." *See Iqbal*, 129 S. Ct. at

1950 (quoting *Twombly*, 550 U.S. at 551, and explaining the principle that such conclusory allegations are not entitled to the assumption of truth).  Although this Court passes no judgment on the ultimate merit of these conclusory allegations, care must be taken when evaluating the sufficiency of a complaint not to allow such a mere recitation of these conclusions to substitute for the requisite factual allegations.

This Court next considers the factual allegations in Plaintiff's First Amended Complaint to determine if they plausibly suggest an entitlement to relief against Segal.  *See Iqbal*, 129 S. Ct. at 1951.  Plaintiff alleges that on November 25, 2008, when the Star Tribune published an article about Plaintiff's August 2008 lawsuit against the City Attorney's Office, Segal "verbally reprimanded Plaintiff in Plaintiff's office."  (FAC ¶ 53.)  The First Amended Complaint does not explain what the reprimand was about other than to say that Segal was complaining about an unidentified email.  (*See id.*)  Segal "was aware of [Plaintiff's] lawsuit/charges [and] the article in the Star Tribune that day" and made reference to them while she was rebuking Plaintiff.  (*Id.* (stating that Segal was "angry and venting in the same timeframe she was addressing Plaintiff about this lawsuit and newspaper article").)  The First Amended Complaint then says that Segal "admonished Plaintiff . . . in such a manner that made it difficult for Plaintiff to do her job[, and that] Segal was angry and venting in the same timeframe she was addressing Plaintiff about this lawsuit and newpaper article." (*Id.*)  Segal then allegedly opened the office door and "continued to berate and

orally reprimand Plaintiff, so that others in the Office could hear." (*Id.* ¶ 54.) There, the First Amended Complaint's factual allegations about Segal's direct, personal involvement in any acts constituting a violation of Plaintiff's constitutional rights end. Plaintiff alleges that she complained internally about the reprimand, but she does not say to whom she complained. Plaintiff filed a retaliation charge with the EEOC on March 4, 2009, naming Segal, and in April 2009, Plaintiff learned that she was not being awarded one of four offered promotions within the City Attorney's Office. (*Id.* ¶¶ 59, 61.)

There is a shortage of facts alleged in the First Amended Complaint about Segal's personal involvement in, and direct responsibility for, any adverse employment action against Plaintiff. This failure to allege Segal's personal involvement must be viewed in light of the fact that Plaintiff, who is an experienced attorney herself and is represented here by experienced litigation counsel, amended the original Complaint in response to Segal's motion to dismiss for failure to state a claim, where Segal had argued that Plaintiff had not alleged sufficient facts showing that Segal took an adverse employment action against Plaintiff. Thus, it does not appear to this Court that the shortage of such facts is due to a technical pleading error. And this Court evaluates the sufficiency of the pleading against Segal with the knowledge that Plaintiff has now taken her best shot at setting forth Segal's personal involvement in an alleged constitutional violation against Plaintiff.

Plaintiff has not alleged any facts to show that Segal took action to fail to

promote Plaintiff to one of the supervisory positions created in early 2009 in retaliation for Plaintiff's exercise of her First Amendment speech rights in filing a lawsuit and talking to the media; indeed, Plaintiff has not even alleged in the First Amended Complaint that Segal had any involvement at all in this April 2009 decision.

Nor has Plaintiff alleged that Segal was involved in any way in the alleged papering of Plaintiff's personnel file in late 2008. The First Amendment Complaint is carefully circumspect about whether this papering of the file occurred at all. (FAC ¶ 58 ("Plaintiff alleges that *upon information and belief*, Banwer's written reprimand of her that occurred just after her complaint about Segal's conduct (and complained about it as retaliation), is contained in her 'file,' as is information about Segal's reprimand/admonishment of her that she reported on December 1, 2008.") (emphasis added).) Plaintiff appears to contend that this Court should infer that Segal was personally involved in "papering" Plaintiff's file simply because Segal is the City Attorney for Minneapolis. But such an inference would not be reasonable from the facts alleged in the First Amended Complaint. The only allegation that suggests the personal involvement of any individual in "papering" Plaintiff's file points to Dana Banwer, not Susan Segal. On a § 1983 retaliation claim, Segal cannot be held liable for the conduct of another.

Absent such factual allegations that Plaintiff's protected conduct was a substantial or motivating factor in the adverse employment action, *see Shockency*, 493 F.3d at 948, and without any allegation that Segal was

personally involved in such a decision, *see Ellis*, 179 F.3d at 1079, Plaintiff's First

Amended Complaint does not allege sufficient facts to raise a reasonable

expectation that discovery will reveal evidence that Segal retaliated against

Plaintiff for Plaintiff's exercise of her First Amendment rights.  A complaint cannot

simply "le[ave] open the possibility that a plaintiff might later establish some set

of undisclosed facts to support recovery."  *Twombly*, 550 U.S. at 562 (quotations

and alteration omitted).  Rather, a complaint must set forth "factual content that

allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at

556.  The mere fact that Plaintiff's failure to receive a promotion in April 2009 was

consistent with the notion that Segal was retaliating against Plaintiff is simply not

enough to support going forward.  A plaintiff cannot proceed if her allegations are

"merely consistent with" a defendant's liability.  *Twombly*, 550 U.S. at 557.

At the hearing, Plaintiff argued that this Court need not draw any inference

that Segal took action against Plaintiff after the office incident because that

incident was a sufficient "adverse employment action" by itself.  But the law does

not support this theory.  An adverse employment action is one that "might have

dissuaded a reasonable worker from making or supporting a charge of

discrimination."  *Littleton v. Pilot Travel Ctrs., LLC*, 568 F.3d 641, 644 (8th Cir.

2009).  A reprimand can be an adverse employment action if the employer "uses

it as a basis for changing the terms or conditions of the employee's job for the

worse."  *Elnashar v. Speedway Superamerica, LLC*, 484 F.3d 1046, 1058 (8th

Cir. 2007). Because this is a retaliation claim under § 1983 against Segal, to properly plead a cause of action based on the office incident, Plaintiff must allege that Segal herself used the reprimands and admonishments from the office incident as a basis for changing the terms or conditions of Plaintiff's job for the worse. As noted above, the First Amended Complaint is void of any allegation that Segal did *anything* after the office incident, and this Court, therefore, rejects this argument.

At the hearing, Plaintiff further argued that the First Amended Complaint states a claim against Segal for First Amendment retaliation based on a theory that the cumulative effect of many lesser employment actions, including actions taken by Segal's predecessor, Jay Haffern, and other individual supervisors in the City Attorney's Office, substantiates her claim. Plaintiff offers no support for this proposition, and it appears to this Court that such a theory would eviscerate the requirement that a government official can only be held liable for her own conduct when sued under § 1983. *Cf. Iqbal*, 129 S. Ct. at 1949 ("Absent vicarious liability, each Government official, his or her own title nothwithstanding, is only liable for his or her own misconduct."); *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (concluding that in dismissing a § 1983 claim for failure to plead adequate personal involvement the "district court was correct to point out that [the plaintiff did not] adequately connect specific defendants to illegal acts").

Finally, Plaintiff argues that the United States Supreme Court's decision in *Crawford v. Metro. Gov't of Nashville and Davidson County, Tenn.*, 129 S. Ct.

846 (2006), indicates a trend in the Supreme Court's decisions to broaden employee protections in employment-retaliation cases. In *Crawford*, the Court considered whether the anti-retaliation provisions of Title VII, specifically the clause prohibiting retaliation for "opposition" to an employer's unlawful conduct, "extends to an employee who speaks out about discrimination not on her own initiative, but in answering questions during an employer's internal investigation." *Id.* at 849. The Court held that it does. *Id.* Plaintiff, thus appears to argue that because the Supreme Court gave the term "oppose" a broader meaning than had been adopted by the Sixth Circuit, it would also broaden the meaning of "adverse employment action" as well. Such an issue was not before the Court in *Crawford*, and that decision's attention to the narrow issue of interpreting the scope of protection afforded by a statutory term evinces no broader trend. Therefore, this Court finds nothing in the Supreme Court's decision in *Crawfrod* to stand for the proposition Plaintiff advances, and rejects this argument accordingly.

For all these reasons, this Court recommends that Plaintiff's § 1983 claim against Segal be dismissed.

### 2. Qualified Immunity

Defendants also moved to dismiss the claims against Segal on the grounds of qualified immunity. Qualified immunity "shields Government officials from liability insofar as their conduct does not violate clearly established statutory or constitutional rights." *Iqbal*, 129 S. Ct. at 1945 (internal quotations omitted);

*Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009). Qualified

immunity is not just immunity from liability, but also "immunity from suit," from the

burdens of having to defend the litigation. *Mitchell v. Forsyth*, 472 U.S. 511, 526

(1985); *accord Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).

In *Iqbal*, in the context of considering whether the Court of Appeals for the

Second Circuit had jurisdiction to review the interlocutory appeal from a motion to

dismiss on qualified-immunity grounds, the Supreme Court observed that

"whether a particular complaint sufficiently alleges a clearly established violation

of law cannot be decided in isolation from the facts pleaded." 129 S. Ct. at 1946.

Further, the Supreme Court stated that "the sufficiency of [a plaintiff's] pleadings

is both inextricably intertwined with . . . and directly implicated by . . . the

qualified immunity defense." *Id.* at 1946-47 (citations and quotations omitted).

Thus, in order to state a claim for a violation of a clearly established right, Plaintiff

must plead sufficient factual matter to show that Segal subjected Plaintiff to an

adverse employment action in retaliation for her protected conduct.

This Court concludes that Plaintiff has failed to sufficiently plead that Segal

took any action that violated Plaintiff's clearly established First Amendment

rights. If the First Amended Complaint is read to allege that Segal violated

Plaintiff's First Amendment rights based solely on the office incident, this Court

has already determined that, standing alone, that incident is insufficient to allege

an adverse employment action. *See Elnashar*, 484 F.3d at 1058 ("A reprimand is

an adverse employment action only when the employer uses it as a basis for

changing the terms or conditions of the employee's job for the worse.")  Plaintiff did not plead any factual content showing that Segal took any steps to change the terms or conditions of Plaintiff's job for the worse following the office incident. Thus, Segal is entitled to qualified immunity from a claim based solely on the office incident because the oral reprimand she allegedly gave Plaintiff was not a clearly established violation of Plaintiff's First Amendment rights.

Similarly, Segal is entitled to qualified immunity because the First Amended Complaint is void of factual content about Segal's involvement in any other employment decision where Plaintiff's protected conduct was a substantial or motivating factor.  Rather, Plaintiff seeks an inference that because Segal is the City Attorney and orally reprimanded Plaintiff in her office on one occasion, Segal decided not to promote Plaintiff in retaliation for Plaintiff's protected activities.  Absent any factual allegations from which such an inference reasonably could be drawn, and there are none herre, the First Amended Complaint does not state a claim that Segal violated Plaintiff's clearly established First Amendment right.

Plaintiff argues that it is premature for this Court to dismiss on the grounds of qualified immunity because the record is not complete enough for this Court to rule on that issue.  However, whether a government official is entitled to qualified immunity is an issue that is to be decided at the earliest possible stage of litigation.  *Schatz Family ex rel. Schatz v. Gierer*, 346 F.3d 1157, 1160 (8th Cir. 2003) ("[W]e reiterate that the Supreme Court repeatedly has emphasized the

need to address qualified immunity at the earliest possible stage in the litigation.").  Here, Segal's qualified immunity is established on the face of the First Amended Complaint, *see Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996) (noting that qualified immunity is an affirmative defense that will be "upheld on a motion to dismiss only when the immunity is established on the face of the complaint") (quotations omitted), because the First Amended Complaint contains no factual content regarding Segal's personal involvement in any violation of Plaintiff's clearly established rights.  Therefore, this Court rejects Plaintiff's argument that the record should be more developed before any ruling on Segal's qualified immunity is made.

For these reasons, this Court recommends that the claims against Segal be dismissed on the basis of qualified immunity as well.

### B.     Plaintiff's Claims against Defendant City of Minneapolis

Defendants have also moved to dismiss the § 1983 claims against the City of Minneapolis (the "City") on the ground that Plaintiff has failed to sufficiently plead the existence of an unconstitutional policy or custom.  In *Monnell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978), the Supreme Court concluded that:

> [A] local government may not be sued under § 1983 for an injury inflicted by its employees or agents.  Instead it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694.  The Eighth Circuit has clarified that "[f]or a municipality to be liable, a plaintiff must prove that a municipal policy or custom was the 'moving force [behind] the constitutional violation.'"  *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).  Plaintiff must show (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the City's employees; (2) deliberate indifference to or tacit authorization of such conduct by the City's policymaking officials following notice of the misconduct; and (3) that she was injured by acts taken pursuant to the City's policy.  *See id.*  "'At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom."  *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (quoting *Doe v. Sch. Dist. of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)).

Here, Plaintiff has failed to plead any facts from which an inference could be drawn that the City had a policy or custom of retaliating against its employees for exercise of their constitutional rights.  Plaintiff has not alleged any facts showing a widespread, persistent pattern of retaliating against the City's employees who have filed lawsuits and spoken to the media about discrimination or otherwise engaged in protected conduct.  Plaintiff has alleged no facts that relate to the City's policymaking officials' deliberate indifference to or tacit authorization of retaliation for the City's employees' exercise of their First Amendment rights.

Instead, there are several conclusory allegations in the First Amended Complaint that directly relate to Plaintiff's *Monnell* claim including: (1) "Defendant City has not taken reasonable care to prevent and promptly correct retaliatory conduct [and] Defendant ignored and/or tolerated retaliation in the workplace and had no viable system for handling such complaints," (FAC ¶ 64); (2) "Defendants acted under color of law of a statute, ordinance, regulation, resolution, policy, custom or usage when they deprived Plaintiff of his [sic] Constitutional rights, privileges, and immunities," (*Id.* ¶ 71); and (3) "[a]s a direct and proximate result of the Defendants' conduct (some of which was perpetrated by Chief Policymakers), inaction, policy or customs . . . Plaintiff suffered the deprivation of his [sic] constitutional and/or federal statutory rights and suffered personal injuries." (*Id.* ¶ 72.) Plaintiff's only factual allegations that could be construed as actions in retaliation for Plaintiff's exercise of her First Amendment rights include: (1) decisions to not promote her that were made after she began complaining of discrimination; (2) the November 25, 2008 incident in Plaintiff's office with Segal; (3) Banwer's written reprimand; and (4) vague allegations relating to the "papering" of Plaintiff's file.

Even if Plaintiff's First Amended Complaint could be read to suggest that the City, through its employees and agents, retaliated against Plaintiff on more than one occasion for exercising her First Amendment rights, it does nothing to suggest that any such retaliation was made as part of a more widespread, persistent pattern of constitutional violations, or that the City's policymaking

officials tacitly authorized such conduct or were deliberately indifferent to it. Therefore, this Court recommends that Plaintiff's *Monnell* claim against the City be dismissed.

## III.    Conclusion

For the reasons stated above, this Court recommends that Defendants' partial motion to dismiss the § 1983 claims against Segal and the City of Minneapolis be granted.  As a result of this recommendation, no § 1983 claim should remain in this action.

Even though Plaintiff has failed to state a § 1983 claim for First Amendment retaliation against Segal and the City of Minneapolis, Plaintiff's claims that she was discriminated against when she was not promoted to a supervisory position in 2009 and her claim that she was otherwise the victim of retaliation for filing suit are still going forward in this suit as part of Plaintiff's Title VII and Section 1981 claims for which she seeks damages and equitable relief.

## RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.    Defendant's Motion for Dismissal of Section 1983 Claims (Doc. No. 15), be **GRANTED**; and

2.    Plaintiff's claims under 42 U.S.C. § 1983 against Defendant Susan Segal and the City of Minneapolis be **DISMISSED WITH PREJUDICE**.

Date: December 3, 2009

　s/ Jeffrey J. Keyes
JEFFREY J. KEYES
United States Magistrate Judge

Under D. Minn. Loc. R. 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 17, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.